IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| APEXUS SESAME STREET L.P. | ) | |
| Landlord, | ) | |
| vs. | ) | Case No. |
| S.C. JOHNSON & SONS, INC. | ) | TRIAL BY JURY DEMANDED |
| Tenants. | ) | FOR ALL COUNTS SO TRIABLE |

### COMPLAINT

Landlord, Apexus Sesame Street L.P., ("Apexus" or "Landlord"), by and through its attorneys, Lynch Thompson, LLP, hereby states as follows as its Complaint against Tenant, S.C. Johnson & Sons, Inc. ("S.C. Johnson" or "Tenant"):

### NATURE OF THE ACTION

1. Apexus purchased property located at 1010-1050 Sesame Street, Bensenville, Illinois (the "Property") on March 10, 2022 subject to an Industrial Building Lease ("Lease"; attached herein as Exhibit A) between the previous Property owner ("Former Owner") and the Tenant, S.C. Johnson. The Property includes a warehouse space that was leased to Tenant (the "Premises"). As is customary in real estate acquisitions, Former Owner assigned all its rights, title and interest in the Lease to Apexus as part of the sale documentation.

2. During Tenant's tenancy, Tenant allowed the Premises to fall into a state of disrepair and caused significant damage to the Premises. The Premises sustained significant and expensive damage that the Tenant should have avoided through maintenance or repair per the Lease requirements. However, upon the expiration of the Lease, Tenant refused to repair the damages it caused as expressly required by the Lease, or to reimburse Apexus for repairs. Apexus seeks relief for the damage caused by Tenant's Breach of the Lease.

1

## PARTIES, JURISDICTION AND VENUE

3. This Court has personal jurisdiction over the Parties because the lease contract involved tenancy by Tenant in a Premises owned by Landlord located in the Northern District of Illinois. Section 16.02 of the Lease provides that the "Lease shall be governed in accordance with the laws of the State where the Building is located." (Ex. A ¶ 16.02).

4. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a). Landlord seeks recovery of damages in excess of the jurisdictional limit of $75,000 and there is complete diversity between the Parties, who are citizens of different states. Tenant S.C. Johnson, a corporation incorporated under Wisconsin law with its principal place of business at 1525 Howe St, Racine, WI 53403, is a citizen of Wisconsin. Landlord Apexus is a single asset-entity that exists for the purpose of owning the Property which is located in Bensenville, Illinois. None of the partners of Apexus are citizens of Wisconsin.

5. Venue is appropriate in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred within this judicial district as the Premises is located in the Northern District of Illinois.

## FACTUAL ALLEGATIONS

### *The Lease*

6. On January 9, 2020, Tenant and non-party, AG-US Sesame Street Premises Owner, L.L.C. ("Former Owner"), executed the Lease for the Premises, a warehouse space consisting of 145,594 square feet at the Property located at 1050 Sesame Street, Bensenville, Illinois.

7. The Lease Term was for thirty-seven (37) months, beginning February 1, 2020 and ending February 28, 2023. (Ex. A ¶ 1.01). During the Lease Term, Tenant remained the Tenant, and did not assign or sublease the Premises.

2

8. At the start of the Lease, Tenant and its representatives inspected the condition of the Premises and were fully satisfied with the condition. Indeed, Tenant represented in the Lease that: "Tenant has personally inspected the Premises and accepts the same "AS IS" without representation or warranty by Landlord of any kind …" (Ex. A, Exhibit B, Section 1, p. 25).

9. Exhibit B-1 to the Lease has a comprehensive list of all the repairs and other work that Tenant wanted the original Landlord to be responsible for. Tenant listed an installation of Fencing and LED lighting. Tenant made no note of any other damage or defects to the Premises. (Ex. A, p. 25). On information and belief based on Exhibit B-1, Exhibit A and representations of Former Owner, the Premises was in good condition with no significant defects as of the commencement of the tenancy by Tenant.

10. On or around March 2, 2022, Tenant sent Landlord an Estoppel Certificate. (Attached hereto as Exhibit B). Per the Certificate, Tenant represented that

> Tenant has accepted possession of the Premises and any improvements, work and conditions required by the terms of the Lease to be made by the lessor thereunder have been completed to the satisfaction of Tenant except the fencing projected identified in Exhibit B of the Lease … [which, as of the date of the Estoppel, Tenant had never provided a plan or municipality approval for, per the Lease] (Ex. B ¶ 8).

> And further that:

> The Lease is valid and in full force and effect on the date hereof and has not been modified, supplemented or amended… (Ex. B ¶ 2).

In the Estoppel Certificate, the Tenant again made no note of damage to the Premises or other work needed to the Premises. (Ex. B).

11. On March 10, 2022, Landlord purchased the Premises. By purchasing the Premises, Landlord assumed the role of "Landlord" in the Lease and Former Owner assigned all its rights, interests and title to the Lease to Landlord

12. Under the Lease and other than for very specific items that are expressly Landlord's responsibility (such as roof replacements), all other repair, replacement and maintenance of the Premises is the responsibility of the Tenant. The repairs, replacements and maintenance are to be made at the sole expense of the Tenant.

13. Section 7.02 of the Lease provides:

Tenant shall, at its own cost and expense, maintain the Premises in good condition, regularly servicing and promptly making all repairs and replacements thereto… (Ex. A ¶ 7.02).

14. Section 8.02 of the Lease provides:

Tenant shall protect, defend, indemnify and hold Landlord …harmless from and against any and all claims, damages, demands, penalties, costs, liabilities, losses, and expenses (including without limitation reasonable attorneys' fees and expenses at the trial and appellate levels) to the extent (a) arising out of or relating to any gross negligence, or willful misconduct of Tenant or Tenant's agents, employees, contractors, customers or invitees in or about the Premises, including, but not limited to, the Premises, the Building or the Common Areas, (b) arising out of or relating to any of Tenant's Premises, or (c) arising out of any other act or occurrence within the Premises… (Ex. A ¶ 8.02).

15. The Lease, also provides that Tenant is fully responsible for its share of "Operating Expenses" of the Premises which are broadly defined to include (Ex. A ¶ 3.02(c)).

"Operating Expenses" shall mean the amount of all of Landlord's costs and expenses paid or incurred in operating, repairing, replacing and maintaining the Premises, including, but not limited to, the Building and the Common Areas in good condition and repair …. including by way of illustration and not limitation, the following: … painting; stormwater discharge fees; tools and supplies; repair costs; landscape maintenance costs; access patrols; License, permit and inspection fees; management fees; administrative fees; supplies, costs, wages and related employee benefits payable for the management, maintenance and operation of the Building; maintenance, repair and replacement of the driveways, parking areas (repairs but not replacements), curbs and sidewalk areas (including snow and ice removal), landscaped areas, drainage strips, sewer lines, roof (repairs but not replacements) gutters and lighting; and maintenance and repair costs, dues, fees and assessments incurred under any covenants or charged by any owners association, to the extent obligations therefore exist as of the date of this Lease or are otherwise accepted by Tenant in writing. … "

16. Further, Exhibit E of the Lease provides a number of Rules and Regulations relating to Tenant's operations at the Premises, including in Section 11 of such Exhibit which provides:

4

No tenant shall overload the floors of the Premises. All damage to the floor, structure or foundation of the Building due to improper positioning or storage items or materials shall be repaired by Landlord at the sole cost and expense of tenant, who shall reimburse Landlord immediately therefor upon demand.

It is Landlord's desire to maintain in the Building and Common Areas the highest standard of dignity and good taste consistent with comfort and convenience for tenants. Any action or condition not meeting this high standard should be reported directly to Landlord. … [Ex E, last para]

17. Section 2.03 of the Lease provides:

Surrender of the Premises. Upon the expiration or earlier termination of this Lease, Tenant shall, at its sole cost and expense, immediately (a) surrender the Premises to Landlord in broom-clean condition and in the condition and repair required by this Lease, (b) remove from the Premises (I) Tenant's Premises (as defined in Section 8.01 below), (ii) all data and communications wiring and cabling (except those above ceiling, below raised floors and behind walls), and (iii) any alterations required to be removed pursuant to Section 7.03 below, and (c) repair any damage caused by any such removal and restore the Premises to the condition existing upon the Commencement Date. Upon surrender of the Premises, the Premises shall be in good order, condition and repair, subject to reasonable wear and tear and damage by casualty or condemnation. … This Section 2.03 shall survive the expiration or any earlier termination of this Lease.

18. Further, under the Lease, Tenant was fully responsible for compliance with law and applicable codes with respect to its operations (see Sect 15.02 of Lease and above provisions).

*The Damage*

19. As of February 28, 2023, the Lease's expiration date, the Premises had sustained significant unrepaired damages. A list of such unrepaired items was delivered to Tenant. Based on reports and estimates, some made by Landlord, and others provided by third-party contractors and the third party Premises manager, the cost of repair of the damages to the Premises would total in excess of $500,000.

20. In anticipation of the Lease expiring and to give Tenant as much opportunity as possible to repair and maintain their space before Lease expiration, between September 2022 and February 2023, Landlord completed a number of walkthroughs and inspections of the Premises

5

and discussed the damages in detail with the Tenant and Tenant's representatives. Landlord gave the Tenant the opportunity to fix the damage found. However, Tenant refused to make repairs, even though Tenant is expressly required under the lease to make such repairs before lease expiration on February 28, 2023.

21. Landlord has been forced to cure the damage itself (much of which has not been completed as of the date of this Complaint) before a new tenant can fully occupy the Premises. Landlord has expended, and continues to expend, significant time and expense to solicit repair bids from third party contractors, weigh costs, pay for the repairs, and wait for the repairs to be completed and parts to be ordered.

22. Not only did Tenant default on its obligations to complete the repairs itself, Tenant has refused to reimburse Landlord for the cost of the repairs.

23. Section 13.06 of the Lease provides that:

If either party defaults in the performance or observance of any of the terms, conditions, covenants or obligations contained in this Lease and the non-defaulting party obtains a judgment against the defaulting party, then the defaulting party agrees to reimburse the non-defaulting party for reasonable attorneys' fees incurred in connection therewith. In addition, if a monetary Default shall occur and Landlord engages outside counsel to exercise its remedies hereunder, and then Tenant cures such monetary Default, Tenant shall pay to Landlord, on demand, all expenses incurred by Landlord as a result thereof, including reasonable attorneys' fees, court costs and expenses. Ex. A ¶ 13.06.

24. Landlord faces damages in the cost of repairs, in lost rent, and in attorney's fees.

## COUNT I
### Breach of Lease – Failure to Repair

25. As for its Paragraph 25, Landlord adopts and incorporates Paragraphs 1 through 24 as if fully restated herein.

26. The Lease was valid and enforceable between the parties when Landlord purchased the Premises on March 10, 2022.

27. Landlord, as the Landlord, performed all of its requirements under the Lease.

28. Tenant, as the Tenant, breached the Lease when it allowed the Premises to be damaged without making repairs or otherwise maintaining the Premises.

29. Landlord suffered damages when it had to repair the Premises at significant expense to itself.

30. Based on estimates, the cost of repairing the Premises exceeds $500,000. Landlord also faces damages in the cost of lost time and lost rent because of the Tenant's failure to maintain the Premises during the Lease Term.

31. Tenant refuses to reimburse Landlord for the cost of the damage it caused to the Premises as required by the Lease.

WHEREFORE, Plaintiff Landlord prays for (1) damages in an amount to be established at trial resulting from Tenant's actions; (2) Attorney's fees and costs; and (3) such other and further relief as this Court deems equitable and just.

## COUNT II
### Breach of Lease – Holdover Rent

32. As for its Paragraph 32, Landlord adopts and incorporates Paragraphs 1 through 31 as if fully restated herein.

33. By failing to return the Premises in fully repaired condition, Tenant has continued to constructively possess the Premises.

34. Notwithstanding its best efforts, as of the date of filing, Landlord has not yet completed the repairs to the Premises to allow a new tenant to take full occupancy of the Premises.

35. Under Section 2.04 of the Lease (Ex. A ¶ 2.04), Tenant is required to pay 150% of the total monthly rent (which includes both the base monthly rent paid plus the "additional rent" covering operating expenses, real estate taxes, insurance and utilities) for all holdover tenancies.

36. Until the repairs on the Premises have been completed, and Landlord can collect rent for the entire Premises, Tenant is liable for holdover rent.

WHEREFORE, Plaintiff Landlord prays for (1) damages in an amount to be established at trial resulting from Tenant's actions; (2) Attorney's fees and costs; and (3) such other and further relief as this Court deems equitable and just.

## . COUNT III
## Breach of Lease – Declaratory Judgment under 22 U.S.C. § 2201

37. As for its Paragraph 37, Landlord adopts and incorporates Paragraphs 1 through 36 as if fully restated herein.

38. There exists an actual controversy as to which the court may declare the rights and liabilities of Landlord and Tenant. Specifically, on and after May 10, 2021, Tenant was cited with numerous ordinance violations by the Village of Bensenville for items that were within the Tenant's scope of responsibility under the Lease. Tenant failed to timely correct the alleged violations and has subjected Landlord to the potential for penalty liability to the Village of Bensenville. While the Village of Bensenville has yet to actually impose any penalties, Landlord seeks a declaration that in the event penalties are sought, Tenant be required to pay such penalties.

WHEREFORE, Plaintiff Landlord prays for a declaration that to the extent the Village of Bensenville seeks to impose penalties for ordinance violations within Tenant's scope of responsibility under the Lease, Tenant be required to hold Landlord harmless from such penalties.

| | |
|---|---|
| April 4, 2023 | Respectfully submitted,<br>Apexus Sesame Street., LP |
| Daniel Lynch (Atty No. 6202499)<br>James L. Thompson (Atty No. 6199621)<br>Emily Salomone (Atty No. 6343015)<br>Lynch Thompson LLP<br>150 S. Wacker Drive, Suite 2600<br>Chicago, IL 60606<br>312-346-1600/312-667-9231 (fax)<br>docketing@lynchthompson.com | By:*/s/ Daniel Lynch*<br>One of its attorneys |